**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE SOVOS COMPLIANCE DATA SECURITY INCIDENT LITIGATION** | **Case No. 1:23-CV-12100 ("Master Docket")** <br><br> **CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Plaintiffs[1] and settlement Class Counsel, submit this memorandum of law supporting their Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorney's Fees, Costs, and Service Awards.

## I.    INTRODUCTION

On February 12, 2024, this Court preliminarily approved the Settlement (D.E. 42), which provides for substantial Settlement Class benefits, including: (1) a non-reversionary $3,534,128.50 Settlement Fund, from which Settlement Class Members with Valid Claims will receive compensation for out-of-pocket losses, reimbursement for lost time, compensation for extraordinary losses, and credit monitoring; and (2) valuable injunctive relief, of comprehensive security measures validated by Kroll Cyber Risk. The Settlement Fund will also be used to pay all Settlement Administration Costs, any Court-awarded attorneys' fees and costs to settlement Class Counsel, and any Court-awarded Service Awards to the settlement Class Representatives.

Plaintiffs and settlement Class Counsel now move the Court for Final Approval and apply for

---

[1] All capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement and Releases, which is attached as services related to ***Exhibit A***.

1

their attorney's fees and costs and Service Awards. The Settlement meets all the criteria for Final Approval. The overwhelmingly positive response from the Settlement Class, notwithstanding a single deficient and unfounded *pro se* objection to the Settlement, which the Court should overrule, affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate. For all the reasons set forth herein, the Court should grant Final Approval to the Settlement and Plaintiffs' request for attorneys' fees and costs, and Service Awards.

## II.    PROCEDURAL HISTORY

On May 31, 2023, Progress Software announced a previously unknown vulnerability in its MOVEit Transfer application, which Sovos utilized to help deliver services related to unclaimed property. Agreement ¶ 1. Sovos learned that some of its customers' data may have been impacted by the Data Incident. *Id.* ¶ 2. Thereafter, Sovos was named as a defendant in four class actions between September 13, 2023, and November 2, 2023. *Id.* ¶ 5.

On November 13, 2023, this Court consolidated the first two actions into this action. *Id.* ¶ 5(b); D.E. No. 15. Of the remaining two actions, *Nancy Zide v. Sovos Compliance, LLC and Pacific Premier Bank,* Case No. 8:23-cv-01711, filed in the U.S. District Court for the Central District of California, was voluntarily dismissed with prejudice on November 17, 2023. Agreement ¶ 5(c)(v). The other action, *Gorman v. Progress Software Corporation, et al.,* Case No. 3:23-cv-50397, filed in the U.S. District Court for the Northern District of Illinois, was transferred to this district in connection with the *In re MOVEit Customer Data Security Breach Litigation,* MDL No. 3083. Agreement ¶ 5(c)(iv).

On November 28, 2023, the Parties participated in a full-day private mediation before experienced data breach mediator, Bruce Friedman, Esq. of JAMS. Joint Declaration of Class Counsel ¶ 8-9 ("Joint Decl."), attached as **Exhibit B**. Before mediation, Sovos provided Class Counsel with information related to the Data Incident. *Id.* ¶ 8. The Parties did not settle that day, but two days later, Sovos accepted Plaintiff's last, best, and final mediation offer. *Id.* ¶ 9.

On December 2, 2023, Plaintiffs filed a Consolidated Complaint adding additional plaintiffs and alleging a nationwide class and several state subclasses. D.E. 19. Thereafter, on the same date, the Parties filed a Notice of Class-wide Settlement advising the Court that the Parties resolved the Action

on a class-wide basis. D.E. 20. On December 8, 2023, the Parties executed the Agreement. D.E. 25-2 ¶ 12. That same day, Plaintiffs moved for Preliminary Approval. D.E. 25.

The plaintiff in the *Gorman* action initially opposed the Motion for Preliminary Approval and sought to have the entire case transferred into the *MOVEit* MDL. D.E. 28. Plaintiffs opposed that transfer and moved to strike portions of the *Gorman* plaintiff's motion. D.E. 31, 34. Following discussions between Class Counsel, counsel in the *Gorman* action, and counsel in the *MOVEit* MDL, the *Gorman* plaintiff withdrew his opposition and motion to transfer the instant action and the Court denied his motion as moot. D.E. 39, 40. The Court granted Preliminary Approval of the Settlement on February 12, 2024, following a hearing on February 6, 2024. D.E. 42. This Motion follows.

## III.    SUMMARY OF THE SETTLEMENT AND BENEFITS

Plaintiffs summarize the relevant terms of the Agreement and the Settlement Class benefits.

### a.   Settlement Class

The Settlement Class consists of:

> All living individuals in the United States who were sent a notice by Sovos or by a Sovos Customer indicating that their Private Information may have been impacted in the Data Incident.

Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Sovos or a Sovos Customer, or their respective subsidiaries and affiliated companies; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. D.E. 42 ¶ 1; Agreement ¶ 59. Also, this Court preliminarily certified a California Settlement Subclass, which is comprised of all members of the Settlement Class residing in California. *Id.*

### b.   Settlement Consideration

If approved, the Settlement requires Sovos to create a non-reversionary common $3,534,128.50 Settlement Fund for the Settlement Class. Agreement ¶ 66. The Settlement provides the following monetary benefits for Settlement Class Members:

*Settlement Class Cash Payment A*

- Compensation for unreimbursed out-of-pocket losses of up to $2,000 per Class member, consisting of out-of-pocket expenses related to the Data Incident (including fees for credit reports, bank fees, phone charges, data charges, postage, gasoline, credit

monitoring, identity theft insurance, and any other documented loss fairly traceable to the Data Incident), Agreement ¶ 71(a);

- Compensation for lost time spent responding to the Data Incident of up to five hours of time spent at a rate of twenty-five dollars ($25.00) per hour (or $125.00 in total), Agreement ¶ 71(b); and

- Compensation for extraordinary losses up to a total of $10,000 if the extraordinary loss is: (i) an actual, documented and unreimbursed monetary loss due to fraud or identity theft; (ii) fairly traceable to the Data Incident; (iii) occurred after the Data Incident and before the Claim Form Deadline; (iv) not already covered by one or more of the ordinary loss categories, and (v) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance, Agreement ¶ 71(c).

*Settlement Class Cash Payment B*

- Instead of selecting Cash Payment A, Settlement Class Members may elect to receive a flat payment in the amount of $150.00, Agreement ¶ 72.

*California Statutory Awards*

- In addition to Cash Payment A or Cash Payment B, California Settlement Subclass Members who submit a Valid Claim may also elect to receive the California Statutory Award in the amount of $100.00, Agreement ¶ 73.

*Credit Monitoring*

- In addition to Cash Payment A or Cash Payment B and the California Statutory Claim Payment, if applicable, Settlement Class Members are also eligible to receive up to three years of three-bureau credit monitoring and identity theft protection services, with $1,000,000 in identity theft insurance coverage, Agreement ¶ 74.

The Settlement Class Cash Payments and California Statutory Awards will be subject to a *pro rata* increase from the Net Settlement Fund if the amount of Valid Claims are insufficient to exhaust the entire Net Settlement Fund. Similarly, if the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments and California Statutory Awards may be reduced *pro rata*. To calculate the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Credit Monitoring and then for Cash Payments and California Statutory Awards. Agreement ¶ 70.

Additionally, Sovos has agreed to injunctive relief and provided evidence of the steps it took to fortify its systems against data incidents. Agreement ¶ 75. Sovos provided Class Counsel with a "Security Attestation" from Kroll Cyber Risk attesting to the security measures Sovos implemented following the Data Incident. *Id.* Sovos bore all costs of any such security measures, and under no

circumstances will such costs be deducted from the Settlement Fund. *Id.*

## IV.    NOTICE PROGRAM, CLAIMS PROCESS, OPT-OUTS AND OBJECTIONS

### a.    Notice Program

After this Court entered the Preliminary Approval Order, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Pursuant to the Preliminary Approval Order, Notice was timely and properly sent to 487,991 of the 494,892 Settlement Class members, which equates to a direct notice reach rate of 98.61% of the Settlement Class. Declaration of Settlement Administrator ("Admin. Decl.") ¶ 16, attached as **Exhibit C**.

Specifically, on March 11, 2024, the Settlement Administrator sent Email Notice to 37,051 Settlement Class members. *Id.* ¶ 10, Ex. C. The following day, the Settlement Administrator also sent Postcard Notice to 457,841 members of the Settlement Class. *Id* ¶ 11, Ex. D. Thereafter, Settlement Class members for which Email Notices bounced were sent Postcard Notices. *Id.* ¶ 14. Any Postcard Notices returned undeliverable with a USPS forwarding addresses were re-mailed to those addresses. *Id.* ¶ 15. Postcard Notices returned without a forwarding address were subjected to an address verification search for an updated address and were subsequently re-mailed to those addresses. *Id.* In total, only 261 Postcard Notices returned as undeliverable following re-mailing. *Id.* Lastly, Publication Notice was also completed through targeted advertising on the Facebook and Instagram platforms. *Id* ¶ 12, Ex. G (publication notice). Through such means between March 11, 2024, and May 24, 2024, over 27,600,000 impressions were delivered. *Id.*

Pursuant to the Notice Program, downloadable copies of the Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form were made available to the Settlement Class members on the Settlement Website, *www.SovosDataIncidentSettlement.com*. Admin. Decl. ¶ 7. The Settlement Website went live on March 8, 2024, and contains information about the Settlement, including answers to frequently asked questions, Settlement Administrator contact information, and important dates such as the Final Approval Hearing date, Claim Form Deadline, and last day of the Objection Period and Opt-Out Period. *Id.*

On December 28, 2024, the Settlement Administrator established a toll-free hotline that

utilized an interactive voice response system to provide Settlement Class members with responses to frequently asked questions and provides essential Settlement information. Admin. Decl. ¶ 6. As of June 5, 2024, the hotline had received 835 calls, and 367 callers were connected to live operators for assistance. *Id.*

Settlement Administration Costs will be paid from the Settlement Fund. Agreement ¶ 66.

### b. Claims Process

The timing of the Claims Process was structured to ensure that all Settlement Class members had adequate time to review the terms of the Settlement, compile documents supporting their Claim, and to decide whether to submit a Claim, opt-out of, or object to the Settlement. A Settlement Class Member may submit a Claim even if objecting. The Claims Process is straightforward, and Settlement Class Members are able to submit Claims either through the Settlement Website or by hard copy mailed to the Settlement Administrator. Admin. Decl. ¶ 20. As of June 5, 2024, the Settlement Administrator had received 10,424 Claim Forms: 453 Claim Forms through the mail and 9,971 Claim Forms filed electronically through the Settlement Website. Admin. Decl. ¶ 20. Settlement Class members continue to submit Claim Forms and may do so until July 10, 2024. D.E. 42, ¶ 27. Claim Form submissions are still subject to final audits, including the full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the number of Claims.

### c. Opt-Outs and Objections

The Objection and Opt-Out Periods end on June 24, 2024. Admin. Decl. ¶ 23; D.E. 42 ¶ 27. As of June 6, 2024, there have been only 13 opt-outs (0.0026% of the Settlement Class) and one single deficient and unfounded *pro se* objection received. Admin. Decl. ¶ 24, Ex. H.

### d. Attorneys' Fees, Costs, and Service Awards

Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of $1,177,925.02, which represents 33.33% of the total Settlement Fund, along with reimbursement of reasonable and necessary litigation costs in the amount of $13,825.99. Agreement ¶ 107; Admin. Decl. Exs. C, D, and E. Plaintiffs also request Service Awards in the amount of $2,500.00 for each Class Representative

(for a total of $10,000). *Id.* ¶ 106. The awards will be paid out of the Settlement Fund. Agreement ¶ 107. The Notices sent to Settlement Class members listed the attorneys' fees and Service Awards, and not a single Settlement Class Member, including the one who lodged a deficient objection, has objected to the amounts sought. Admin Decl. Exs. C-E; D.E. 43.

## V.    THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

### a.    The Settlement is Fair, Reasonable, and Adequate.

This Court previously determined it was likely to find the Settlement negotiated by the Parties is fair, reasonable, and adequate under Fed. R. Civ. P. 23, it is within the range of possible approval, and was entered into after arm's-length negotiations. D.E. 42 ¶ 9. The Court should now finally determine the Settlement is fair, reasonable, and adequate and enter Final Approval.

### 1.    Standard for Final Approval

Across many courts, but particularly in the First Circuit, approval of a class action settlement is a staged process. *See Manual for Complex Litigation* (Fourth) § 21.632 (2015). First, the court determines whether the proposed settlement should be preliminarily approved and notice of the settlement distributed to the proposed settlement class, which this Court has done in this Action when the Preliminary Approval Order (D.E. 42) was entered. Then, after considering any objections received from settlement class members, the court determines whether to grant final approval of the proposed settlement.

The established standard for final approval is whether a proposed settlement is "fair, reasonable, and adequate." *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 13 (D. Mass. 2021) (citing Fed. R. Civ. P. 23(e)(2)). The determination of whether a settlement is fair, reasonable, and adequate should be conducted "within the context of the public policy favoring settlement." *Hill v. State St. Corp.*, No. 09-12146, U.S. Dist. LEXIS 2166 (D. Mass. Jan. 8, 2015). As such, "[w]here the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Robinson v. National Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (internal quotations omitted). Furthermore, "the district court enjoys considerable range in approving or disapproving a class action settlement, given the generality of the

standard and the need to balance [the settlement's] benefits and costs." *Id.* (internal quotations omitted).

Federal Rule of Civil Procedure 23(e)(2), sets forth the following factors the court must consider in determining if the class action settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*See Jean-Pierre*, 538 F. Supp. 3d at 212–13. Considering these factors, the terms of this Settlement warrant Final Approval.

### 2. The Presumption in Favor of Reasonableness Applies Here

Here, the presumption in favor of reasonableness should apply. The instant Settlement was the product of arm's-length negotiations, whereby after a full-day mediation before an experienced mediator, the Parties had not yet reached resolution, and only reached a final agreement two days later after Plaintiffs made their best, last, and final offer. Joint Decl. ¶ 9; D.E. 25-2 ¶ 7. Before mediation, the Parties exchanged information related to the categories of Private Information impacted by the Data Incident, which showed, *inter alia*, that the threat actor responsible for the Data Incident had confirmed to Sovos that all the data impacted in the Data Incident had been deleted. *Id.* ¶ 8; Agreement ¶ 7(a). As such, the Settlement is clearly the product of serious, informed, non-collusive negotiations between the Parties. D.E. 25-2 ¶ 19; *see also Robinson*, 14 F.4th at 59 (holding where the parties engaged in pre-mediation discovery and then mediated a settlement shortly after filing the action, the district court did not abuse its discretion in approving the settlement); *see also Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744, at *15 (C.D. Cal. Oct. 30, 2023) (approving mediated settlement in data breach case reached after informal discovery, collection of publicly available information, and where the "litigation had not progressed far").

In reaching this resolution, settlement Class Counsel was also able to utilize their significant

experience in class action litigation and having negotiated hundreds of class action settlements – including dozens of complex data breach settlements. Joint Decl. ¶ 10 and Exs. 1-2 thereto. Through its investigation and past experience, settlement Class Counsel was able to fully evaluate whether "Plaintiffs' claims would be dismissed before trial, the amount Plaintiffs might receive at trial, the number and novelty of the complex issues, the risk that Plaintiffs would receive less than the Settlement Relief or take nothing, and the risk of a reversal of any judgment in favor of the Plaintiffs." *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 11-md-02208-MAP, 2014 U.S. Dist. LEXIS 170100, at *11 (D. Mass. Dec. 9, 2024); *Carter*, 2023 U.S. Dist. LEXIS 210744 at *15 ("With all that information, the parties were able to realistically value the scope of Defendant's potential liability and assess the costs, risks, and delay of continuing to litigate.").

### 3.    The Relief Obtained is More than Fair, Reasonable, and Adequate

Plaintiffs and settlement Class Counsel obtained a strong result for the Settlement Class. Joint Decl. ¶ 17. The instant $3,534,128.50 non-reversionary all cash common Settlement Fund for a class with 494,892 members is in line with or exceeds other settlements in cases involving data breaches. *Id.* An effective way to compare data breach settlements is by dividing the common fund amount by the number of class members. *See, e.g., In re Experian Data Breach Litig.*, No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243, at *25 (C.D. Cal. May 10, 2019) (noting settlement provided a $1.47 payout per person, "which compares favorably to other approved data breach settlements" and collecting cases showing same). Here this Settlement returned $7.14 per person.[2] Joint Decl. ¶17. The below chart shows a number of recently approved data breach settlements from around the country, which shows how the instant Settlement compares very favorably to other similar common fund data breach settlements.

---

[2] To be clear, given claims rates of between 1% and 3% on average for data breach cases, the actual amounts Claimants receive greatly exceeds the per person calculation providing a useful benchmark when comparing cases.

| Case Name | Case Number | Amount | Class Size | Per Person |
|---|---|---|---|---|
| *Reynolds v. Marymount Manhattan College* | 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Garcia, et al. v. Washington Department of Licensing* | 22-2-05635-5 SEA (Super. Ct. Wash.) | $3,600,000 | 545,901 | $6.59 |
| *Thomsen, et al. v. Morley Companies Inc.* | 1:22-CV-10271-TLL-PTM (E.D. Mich.) | $4,300,000 | 694,679 | $6.19 |
| *In re: Blackhawk Network Data Breach Litigation* | 22-cv-07084 (N.D. Cal.) | $985,000 | 165,727 | $5.90 |
| *Kesner, et al. v. UMass Memorial Health Care Inc.* | 2185 CV 01210 (Super. Ct. Mass.) | $1,200,000 | 209,047 | $5.74 |
| *Nelson v. Bansley & Kiener, L.L.P* | 2021CH06274 (Cir. Ct. Ill.) | $900,000 | 274,115 | $3.28 |
| *Cheryl Gaston, et al. v. FabFitFun Inc.* | 2:20-cv-09534-RGK-E (C.D. Cal.) | $625,000 | 441,160 | $1.41 |

Furthermore, the Settlement will provide real monetary benefits to over 10,000 Settlement Class Members who have already submitted Claims, (Admin. Decl. ¶ 20), including: (1) compensation for costs incurred and lost time responding to the Data Incident payable at $25.00 per hour, or a flat cash payment of $150.00; (2) the ability to elect up to three years of credit monitoring (or one year if a Settlement Class Member already elected to receive two years of credit monitoring from Sovos pursuant to the Data Incident notice letter); and (3) a $100.00 payment for members of the California Settlement Sub-Class Members who submit a Valid Claim. Agreement ¶¶ 70-74.

As outlined in the Motion for Preliminary Approval, Plaintiffs faced significant risks and costs should they have continued to litigate the Action. First, there was a risk the Court would not certify a class. Joint Decl. ¶ 18. "Data breach cases . . . are particularly risky, expensive and complex" due at least in part to the cutting-edge, innovative nature of data breach litigation and the rapidly evolving law. *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415- CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019*); see also In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-MD-2800, 2020 WL 256132, *15 (N.D. Ga. Mar. 17, 2020) (in data breach "[t]he law . . . remains uncertain and the applicable legal principles have continued to evolve"). For these reasons, data breach cases like this one generally face substantial class certification hurdles. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litigation,* No. 3:20-mn-02972-JFA, 2024 WL 21555221 (D.S.C. May 14, 2024) (denying class

certification in a data breach action after concluding proposed class and sub-classes were not ascertainable); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (denying class certification in cybersecurity incident class action litigation). Maintaining class certification is often an equally challenging hurdle. *See e.g., Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. Aug. 18, 2023) (decertifying classes).

Second, there was a risk Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis after a motion to dismiss, motion for summary judgment, and/or *Daubert* motions on damages methodologies, among other motions. Joint Decl. ¶ 19. To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unpaved, particularly in the area of damages. *See, e.g., Southern Independent Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *8 (M.D. Ala. Mar. 13, 2019) (ruling under *Daubert* that causation not satisfied for class certification purposes in data breach action). Indeed, the damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. In the instant matter, these concerns were particularly heightened by the fact that Sovos maintains the threat actor represented it deleted the stolen data, meaning the risk of future harm to Plaintiffs and the Settlement Class may have been significantly reduced when compared to other data breach actions. *Id.* ¶ 20.

Third, time was not on the Settlement Class members' side. While the Parties would be litigating the foregoing issues, potentially for years to come, Settlement Class members would have been exposed to the ongoing risk of identity theft without the protection of credit monitoring offered by the instant Settlement. Thus, a reasonable settlement is more practical than facing the risks of no recovery at all after years of litigation. *Id.* ¶ 21.

In contrast to the risk, cost, and delay posed by proceeding to trial, if it is approved, the Settlement will provide certain, substantial, and immediate relief to the Settlement Class. *Id.* ¶ 22. It ensures that Settlement Class Members with Valid Claims will receive guaranteed compensation now, provides Settlement Class Members with access to valuable and useful Credit Monitoring services and other benefits that may not have been available at trial, and regarding security measures to protect

Settlement Class Member's data that may remain with the company. *Id.* Based on the foregoing, it is settlement Class Counsel's well-informed opinion that, given the uncertainty and further substantial risk and expense of pursuing the Action through contested class certification proceedings, trial and appeal, the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *Id.* Plaintiffs likewise believe the Settlement is favorable to their fellow Settlement Class members. Accordingly, the substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate. *Id.*

Finally, the Settlement has received a positive reception from the Settlement Class. The 10,424 claim forms submitted thus far represent a 2.1% claims rate. Admin Decl. ¶ 20. This is on par with or exceeds the claims rates seen in most data breach class actions. *See, e.g., In re Wawa, Inc. Data Sec. Litig.,* No. 19-6019, 2024 U.S. Dist. LEXIS 65200 (E.D. Pa. Apr. 9, 2024) (2.56% claims rate "actually compares favorably to the claims rates in other data breach class actions"); *Carter,* 2023 U.S. Dist. LEXIS 210744 at *15 (1.6% claims rate "is in line with claims rates in other data breach class action settlements" and collecting cases with claims rates between 0.83% and "about two percent")*; In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate reflects a positive reaction by the class). As such, the claims rate should be seen as a favorable sign that the Settlement Class approves of this Settlement.

Likewise, out of 494,892 Settlement Class Members, only one lodged an objection to the Settlement so far, and just 13 members opted-out. Admin. Decl. ¶ 24. As described in detail below, the objection is deficient and, even if it complied with the Settlement's and the Court's objection requirements, it is without merit. A single objection out of over 490,000 class members and the limited number of opt-outs clearly demonstrates the Settlement has overall received a very positive reception by the Settlement Class. The almost unanimous support for this Settlement reaffirms the Court's preliminary conclusion that the Settlement is fair, reasonable and adequate.

## VI.    The Lone Objection is Deficient and Without Merit and Should be Overruled

As discussed hereinabove, the proper standard for approval of the proposed Settlement is whether it is fair, reasonable, adequate, and free from collusion, *Jean-Pierre,* 538 F. Supp. 3d at 212-213

(citing Fed. R. Civ. P. 23(e)(2)), not whether the Settlement Class could have received a better deal in exchange for the release of their claims. Certainly, "[a] settlement need not reimburse 100% of the estimated damages to class members in order to be fair." *In re Celexa*, No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 125041, at *5 (D. Mass. Sept. 8, 2014); *see also Gulbankian v. MW Mfrs., Inc.*, No. 10-10392, 2014 U.S. Dist. LEXIS 177668 (D. Mass. Dec. 29, 2014) ("Indeed, the court should not use the highest award the plaintiffs could have received after full and successful litigation on the claim as a benchmark."). The sole objection, filed by David Green, merely demands greater compensation, as well as identity monitoring "through victim death[,]" and should be overruled. He was free to opt-out of the Settlement if he thought it was lacking.

As noted herein, there is overwhelming support for this Settlement from the Settlement Class, with Mr. Green standing alone as the sole objector. Mr. Green filed his objection *pro se* on May 13, 2024. D.E. 43. However, in filing the objection he failed to comply with the mandatory objection procedure set forth in the Agreement and required by the Court. D.E. 42 ¶ 17. Among other things, Mr. Green failed to sign the Objection. *Id.* ¶ 17(j). He also failed to list the number of times he has objected. *Id.* ¶ 17(e). His Objection also does not state whether he will attend the hearing. *Id.* ¶ 17(i). For these reasons alone, Mr. Green's Objection is invalid and should be overruled. In addition to the deficiencies above, Mr. Green makes six statements none of which actually articulate a reason to deny Final Approval.

    a.    **"No closure of liability."** This statement is fatally vague. While true that, to the extent Mr. Green's data was impacted, and that data "does not expire[,]" the Settlement relief from the injunctive relief and compensation he may claim will provide him meaningful protection for years into the future. Mr. Green also implies, without factual or legal support, that justice is not being met through the Settlement. Not so. Even though all settlements are by their nature compromises, for the reasons stated above, the Settlement is fair, reasonable, adequate, and free from collusion and is, accordingly, justice is being done.

    b.    **"No evidence of victim protection."** Mr. Green incorrectly assumes Sovos will directly provide the identity monitoring services available in the Settlement, and that such an offering

"constitutes a conflict of interest." Objection at p. 1 ("We know that SOVOS cannot be trusted with their offering of 'Identity monitoring services.'"). However, the monitoring will be provided by a third party monitoring service, eliminating any conflict of interest Mr. Green fears, and Sovos will not possess or control any data Settlement Class Members provide to obtain Credit Monitoring services.

      c.      **"Independent 3rd Party Protection for Life for Each Victim."** Mr. Green' request for lifetime identity theft protection could not reasonably be obtained in this Action. He misunderstands the Settlement by claiming it does not provide for independent third-party identity monitoring services. The credit monitoring here will be provided by a third party who is a qualified provider of such services and who provides such services regularly as part of its business. The identity monitoring services will include (i) real time monitoring of the credit file at all three bureaus; (ii) dark web scanning with immediate notification of potential unauthorized use; (iii) comprehensive public record monitoring; (iv) identity theft insurance (no deductible); and (v) access to fraud resolution agents to help investigate and resolve instances of identity theft.

      d.      **"Vulnerable Code Creates Victims."** Mr. Green takes issue with the Sovos and "MOVEit" data security practices and raises questions of liability applicable to both Sovos and Progress Software Corporation ("Progress"), the provider of the MOVEit secure file-transfer application Sovos used at the time of the Data Breach. However, such questions defeat the purpose of this Settlement, which is to resolve all Sovos' liability by providing meaningful Settlement Class relief in exchange for Releases by those who choose to remain in the Settlement. Further, additional discovery is not necessary here, where Plaintiffs already engaged in substantial confirmatory discovery, resulting in the arm's-length negotiations that culminated in the proposed Settlement. *See In re Lupron® Mktg. & Sales Practices Litig.*, No. 01-10861-RGS, 2005 U.S. Dist. LEXIS 4039, *6 (D. Mass. Mar. 16, 2005) ("Class members who object to a class action settlement do not have an absolute right to discovery[.]"). Moreover, the Settlement's release does not extend to any claims that the Settlement Class may have against Progress. Progress' liability is not before this Court, and it will be litigated and ultimately decided in *In re: MOVEit Customer Data Security Incident Litigation*, MDL No. 1:23-md-03083-ADB.

e.      **"Failure to Disclose."** Mr. Green lists several questions specifically directed at Sovos regarding its disclosure of the Data Incident, the answers to which have no impact on whether the Settlement is fair, reasonable, adequate, and free from collusion. Mr. Green's unreasonable petition for "additional fines and penalties" against Sovos based on a supposed delay in notification should also be overruled. Beyond the fact that Mr. Green does not identify under what statute or theory of liability such "additional find and penalties" would be justified, the Settlement already requires Sovos to pay a substantial sum to resolve the claims against it.

f.      **"Vulnerability and Client Banking."** Once again, Mr. Green raises questions directed at Sovos alleging an unsubstantiated question regarding client notification from his bank surrounding the Data Incident. Mr. Green does not explain how an additional notification from his bank would have changed anything.  He again makes an unsupported petition to the Court to level "additional fines and penalties" against Sovos, but he provides no valid justification or basis to do so.

In sum, Mr. Green's Objection reads more like a request to be excluded from the Settlement. Indeed, the objection is lacking in any well-articulated reasoning whatsoever as to why the Settlement is not fair, reasonable, and adequate. As such, it should be overruled.

**VII.    The Court Should Certify the Proposed Settlement Class**

Settlement classes are routinely certified in data breach cases.[3] There is nothing unique about this Action that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it would "likely certify at the Final Approval stage a Settlement Class." D.E. 42 ¶ 4. Nothing has changed relative to the Rule 23 factors since Preliminary Approval. For the purposes of Settlement, the Settlement Class still satisfies numerosity and commonality, and Plaintiffs meet the requirements for typicality and adequacy. D.E. 25 at 16-18 (providing a detailed analysis of how the

---

[3] *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 U.S. Dist. LEXIS 252202 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. l:16- cv-03025, 2019 U.S. Dist. LEXIS 120558 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.*, l:17-md-2800-TWT, 2020 WL 256132  (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

instant Settlement Class satisfies the requirements of Rule 23(a)). In addition, common issues predominate, and a class action settlement is the superior means by which to resolve class member claims. *Id.* at 18 (discussing how the instant Settlement Class meets the requirements of Rule 23(b)(3)). Moreover, settlement Class Counsel have decades of combined experience vigorously litigating class actions, are well suited to advocate on behalf of the Settlement Class, and as the foregoing section shows a strong result was obtained for the Settlement Class. *See* Joint Decl., Exs. 1-2. For these reasons, the Court should finally certify the Settlement Class for settlement purposes, finally appoint Plaintiffs as settlement Class Representatives, and finally approve settlement Class Counsel's position.

### VIII.  Notice to the Settlement Class Complied with Due Process and Rule 23

The Court previously approved the Notice Program and found it satisfied all requirements of due process and Rule 23. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class). The Notice Program, which provided the best notice practicable under the circumstances, has been successfully implemented and reached approximately 98.61% percent of the Settlement Class. *See* Admin Decl. ¶¶ 16, 18 ("It is my professional opinion that the Notice Plan implemented here was the best notice practicable under the circumstances"). The Settlement Website allowed visitors to download the Long Form Notice, the Claim Form, and Court documents such as the Complaint and full Agreement, as well as allowing them to submit Claims and address updates electronically, find answers to frequently asked questions, view important dates and deadlines, and contact the Settlement Administrator. *Id.* ¶ 7. The fact that the Settlement Website received over 9,900 claims shows its effectiveness.

### IX.    APPLICATION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

#### a.  The Requested Attorneys' Fees Award is Fair and Reasonable

When awarding attorneys' fees, the First Circuit follows the common fund doctrine. "Under that doctrine, "attorneys whose efforts lead to the creation of a fund for the benefit of the class are 'entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478,

100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass. 2015) ("Attorneys in a certified class action may be awarded reasonable fees and costs."). In contingent fee cases such as this, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources, and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (approving the percentage of fund approach as an acceptable method and recognizing "that use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"); *see also Carlson v. Target Enter.*, 447 F. Supp. 3d 1, 3 (D. Mass Mar. 23, 2020) ("In the First Circuit, the percentage of fund methodology, . . . is favored and appropriate in common fund cases.").

Here, Plaintiffs seek Court approval of settlement Class Counsel attorneys' fees of 33.33% of the cash Settlement Fund, which equals $1,177,925.02. Plaintiffs also seek reimbursement of litigation costs totaling $13,541.16. Joint Decl. ¶ 40. This request is within the range of attorneys' fee requests that have been approved in this judicial district. *See Meaden et al. v. Harborone Bank*, Case No. 1:23-cv-10467-AK (D. Mass. Nov. 14, 2023) ("33.33% of the Settlement Fund is fair and reasonable in light of the nature of this case"); *Fiorentino v. Flosports, Inc.*, Case No. 1:22-cv-11502 (D. Mass. March 5, 2024) (awarding one-third of the settlement fund); *Klein, et al. v. Bain Capital Partners, LLC, et al.*, 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33.33% of settlement fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-82 (D. Mass. Sept. 28, 2005) (same); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 U.S. Dist. LEXIS 244677, at *11 (D. Mass. July 18, 2018) (same); *In re Asacol Antitrust Litig.*, No. 1:15-CV-12730-DJC, 2017 U.S. Dist. LEXIS 221904, at *18 (D. Mass. Dec. 7, 2017) (same); *In re Prograf Antitrust Litig.*, No. 1:11-MD-02242-RWZ, 2015 U.S. Dist. LEXIS 199792, 2015 WL 13908415, at *13-14 (D. Mass. May 20, 2015) (same); *see also Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 184926, at *10 (D. Mass. Nov. 8, 2017) ("Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent."); *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. Nov. 10, 2014) ("[N]early two-thirds of class action fee awards based on

the percentage method were between 25% and 35% of the common fund.").

In the Preliminary Approval Order, the Court already found Plaintiffs' intention to seek no more than 33.33% of the Settlement Fund in attorneys' fees as reasonable. D.E. 42 at 9 ("The Court hereby preliminarily approves the Settlement, as embodied in the Agreement, as being fair, reasonable, and adequate, and in the best interest of the named Plaintiffs and the Settlement Class. . . ."). The Court's determination that "the Settlement is fair, reasonable, and adequate" includes Plaintiffs' intention to seek 33.33% for attorney's fees. *Id.* As Plaintiffs demonstrate below, settlement Class Counsel's request is reasonable.

### b. The Relevant Factors Considered by Courts in this Circuit Support the Requested Fees Award

When determining the reasonableness of attorneys' fees, courts in this District generally consider "the size of the fund and number of persons benefitting from it; the skill, experience, and efficiency of class counsel; the complexity of the litigation and its duration; the risks involved with the litigation; the amount of time spent on the case by class counsel; awards in comparable cases; and public policy considerations." *Mongue v. Wheatleigh Corp.*, No. 3:18-cv-30095-KAR, 2024 U.S. Dist. LEXIS 69928, at *13 (D. Mass. Apr. 16, 2024). Settlement Class Counsel employs those factors, and as shown below, they supports the requested 33.33% fee as fair and reasonable.

### 1. Size of the Fund and the Number of Class Members Benefitted

Class Counsel secured a favorable $3,534,128.50 non-reversionary all cash common fund. This amount equates to $7.14 per Settlement Class member, a number that as shown above meets or exceeds the results achieved in other recent data breach settlements.

In addition to the fund size, when looking at the quality of settlement Class Counsel's representation courts typically find the absence or near absence of objections from the class to the attorneys' fees request supports the reasonableness of those fees. *See Bezdek*, 79 F. Supp. 3d at 347 (observing the "overwhelmingly positive" reaction of the class, which yielded only 23 opt-outs and 3 objections); *In re Puerto Rico Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 473 (D. P.R. Sept. 13, 2011) ("Three objections, with none of the three challenging the amount of the Settlements, out of a

potential Class of 61,854, certainly weighs in favor of approval."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by members of the Class is entitled to great weight by the Court."). Here the single objection made no mention of settlement Class Counsel's requested fee. D.E. 43. Moreover, the small handful of opt-outs demonstrates the Settlement Class is pleased with the Settlement and takes no issue with settlement Class Counsel receiving 33.33% of the Settlement Fund. While the Objection and Opt-Out Deadlines have not yet passed, the Settlement Class' reception thus far strongly suggests their approval of the Settlement and the proposed attorneys' fee award.

### 2. Settlement Class Counsel's Skill, Expertise, and Efficiency

In evaluating the skill and efficiency of class counsel, courts determine whether counsel, "had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek*, 79 F. Supp. 3d at 348, *aff'd*, 809 F.3d 78 (1st Cir. 2015). Indeed, settlement Class Counsel's skill and experience in complex class action litigation weigh in favor of the requested attorneys' fee award. Settlement Class Counsel's background and the background of the supporting attorneys and staff of Siri & Glimstad LLP and Kopelowitz Ostrow P.A. demonstrate that settlement Class Counsel is experienced in the highly specialized field of class action litigation – particularly data breach class action litigation – and are well-credentialed and equal to the difficult and novel tasks at hand. Joint Decl. ¶¶ 2, 10, and Exs. 1-2 thereto (listing qualifications of settlement Class Counsel). Settlement Class Counsel's attorneys' fee request is commensurate with that experience, which was leveraged here to procure the Settlement via early resolution of the Action.

### 3. Complexity and Duration of the Litigation

Even though settlement Class Counsel is confident Plaintiffs' claims would prevail at trial, as discussed above, they anticipated facing several challenges in prosecuting this action, which anticipation led, in part, to the negotiations that culminated in this Settlement. Joint Decl. ¶¶18-20. "Historically, data breach cases have had great difficulty in moving past the pleadings stage and receiving class certification." *Pfeiffer v. Radnet, Inc.*, 2022 U.S. Dist. 125933, at *6-7 (C.D. Cal. Feb. 15,

2022). As a result, Settlement Class Members may never have secured relief, financial or otherwise, absent this Settlement. Without reaching a swift settlement, Plaintiffs would have otherwise endured lengthy, expensive, and arduous litigation, during which they would still be exposed to the risk of identity theft. Accordingly, the requested attorneys' fee award considers the novelty and complex nature of data breach class action cases, and appropriately compensates settlement Class Counsel's ability to resolve this matter efficiently while recovering the maximum amount available to the Settlement Class in a timely manner.

### 4.    Contingency and Risky Nature of Litigation

The uncertain nature of contingency fees requires counsel to assume more risk than in cases where compensation is based on billable hours. The risk involved in prosecuting a class action is an important consideration in determining an appropriate attorneys' fee award and is intended to recognize that cases taken on a contingent fee basis entail risk of non-payment for the attorneys who prosecute them. This factor also embodies an assumption that contingency work is entitled to greater compensation than non-contingency work. *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 U.S. Dist. LEXIS 17456, at *15 (D. Mass. Aug. 17, 2005). ("[m]any cases recognize that the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award").

Here, settlement Class Counsel undertook this Action on a purely contingent basis, with no assurance of recovery of costs or compensation for their time. Joint Decl. ¶ 26. As such, they assumed significant risk of nonpayment or underpayment. *Id.* Furthermore, the attorneys involved have foregone the ability to devote time to other cases and advanced their own funds to prosecute the Action, all at the substantial risk it would yield no (or very little) recovery and leave them uncompensated for their time and out-of-pocket costs. *Id.* Despite these substantial risks, settlement Class Counsel remained steadfast and chose to represent Plaintiffs on contingency. *See Pfeiffer*, 2022 U.S. Dist. 125933, at *7 ("Because Class Counsel took this case on a contingency basis in a risky and still-developing area of law, this factor weighs in favor of the proposed attorneys' fee award."); *see also Brulee v. Dal Global Servs., LLC*, No. CV 17-6433, 2018 U.S. Dist. LEXIS 211269, at *28 (C.D. Cal.

Dec. 13, 2018) ("Attorneys are entitled to a larger fee award when their compensation is contingent in nature"). Because settlement Class Counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment, such a risk warrants an appropriate fee. *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. Mar. 20, 2019) ("a contingency fee arrangement often justifies an increase in the award of attorney's fees.").

### 5. Class Counsel's Time and Lodestar are Reasonable

Class Counsel devoted a significant amount of time to prosecuting Plaintiffs' claims efficiently and effectively to ensure that the best possible outcome for the Settlement Class could be achieved. As a result, Settlement Class Counsel's lodestar is reasonable. Joint Decl. ¶ 28. Settlement Class Counsel have invested a total of 452.70 hours in the litigation thus far, which is appropriate for this type of class action. *Id.* ¶ 29. This time included investigating and bringing the case upon the announcement thereof; drafting the initial complaint and motion to consolidate relate cases and appoint interim co-lead counsel; drafting the consolidated complaint; conducting informal discovery; preparing for and attending mediation; negotiating a complex Agreement; moving for and successfully obtaining Preliminary Approval; working in concert with the Settlement Administrator; monitoring the Notice Program and claims administration; and preparing this Motion. *Id.* Based on Siri & Glimstad LLP's and Kopelowitz Ostrow P.A.'s hourly rates, Settlement Class Counsel's current lodestar is $312,163.00, meaning a lodestar multiplier of 3.77 supports the requested attorneys' fee award. *Id.* ¶ 30. *See, e.g., Mooney v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 232959 (D. Mass. Jan. 23, 2018) (approving 4.77 lodestar multiplier); *Gordan v. Mass. Mut. Life. Ins. Co.*, 2016 U.S. Dist. LEXIS 195935 (D. Mass. Nov. 3, 2016) (approving 3.66 lodestar multiplier); *New England Carpenters Health Ben. Fund, et al. v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419 (D. Mass. Aug. 3, 2009) (approving 8.3 lodestar multiplier).

Settlement Class Counsel will spend additional time going forward preparing for, and appearing at, the Final Approval Hearing, overseeing the final weeks of the Claims Process, and handling all post-Settlement approval issues. Joint Decl. ¶ 39. Based on prior experience, settlement

Class Counsel anticipate an additional 40 hours will be invested in this Action. *Id.* Therefore, this Court should "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case" and find settlement Class Counsel's lodestar is reasonable and supports an appropriate valuation of the time spent. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1024 (C.D. Cal. Dec. 26, 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel.").

### 6. Awards in Similar Cases

Federal district courts across the country award similar attorneys' fees in data breach class actions involving non-reversionary all cash settlement funds. *See, e.g., Kond, et al. v. Creative Services, Inc.,* No. 1:22-cv-10438-DJC, (D. Mass. Sept. 7, 2023) (approving one-third of the settlement fund); *Ford v. Takeda Pharms. U.S.A., Inc.,* No. 1:21-cv-10090-WGY, 2023 U.S. Dist. LEXIS 93286, at *8 (D. Mass. Mar. 31, 2023) (same); *Abrams, et al. v. The Savannah College of Art and Design Inc.*, No. 1:22-cv-04297-LMM, (N.D. Ga. Sept. 19, 2023) (same); *Phelps, et al. v. Toyotetsu North America*, No. 6:22-cv-00106-CHB-HA (E.D. Ken. Oct. 24, 2023) (same); *In re: Forefront Data Breach Litigation*, Case No. 1:21-cv-000887-LA, (E.D. Wis. Mar. 22, 2023) (same); *Davidson v. Healthgrades Operating Company, Inc.*, Case No. 1:21-cv-01250-RBJ, (D. Colo. Aug. 22, 2022) (same). Indeed, "[c]ourts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in [a] class action settlement[.]" *Koszyk v. Country Fin.*, No. 16-cv-3571, 2016 U.S. Dist. LEXIS 126893, at *10 (N.D. Ill. Sept. 16, 2016). As the case law from this District and other federal courts cited above demonstrate, the 33.33% requested attorneys' fee award sought here is squarely in line with other awards approved in this District and other data breach cases across the country.

### 7. Public Policy Considerations

Public policy considerations support awarding settlement Class Counsel the requested attorneys' fee award. There is a "significant societal interest in obtaining redress" and in holding defendants accountable through class action litigation. *In re Lupron,* 2005 U.S. Dist. LEXIS 17456, at *23. Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the general public." *In re Neurontin Mktg.*, 58 F. Supp. 3d at 171. Here, the

Settlement serves an important public policy concern by protecting consumers' interests in the privacy and confidentiality of their personal information and by causing Sovos to confirm its procedures for protecting these interests. Accordingly, compensating settlement Class Counsel appropriately for prosecuting this action serves this important policy goal.

Thus, settlement Class Counsel respectfully requests the Court award $1,177,925.02.

### c. Class Counsel's Costs are Reasonable and Should Be Reimbursed

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-cv-10090-WGY, 2023 U.S. Dist. LEXIS 93286, at *7-8 (D. Mass. Mar. 31, 2023) (quoting *Hill v. State St. Corp.*, No. 09-12146, 2014 U.S. Dist. LEXIS 179702, at *53 (D. Mass. Nov. 26, 2014). To be recoverable, the costs must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D. N.J. Sept. 27, 2001).

Here, settlement Class Counsel incurred $13,825.99 in litigation costs that were necessary and incidental to the representation of the Class. Joint Decl. ¶ 43 These well-documented costs include the various court filing fees, service costs, legal research, mediator's costs, and travel costs. These costs were modest, reasonable, and necessary for the prosecution of the case. *See, e.g., Hill*, 2014 U.S. Dist. LEXIS 179702, at *53-54 (reimbursing litigation costs for court fees, legal research, and experts).

### d. The Requested Service Awards Should Be Approved

Finally, the settlement Class Representatives respectfully request approval of Service Awards in the amount of $2,500.00 for each of them. These awards recognize the burdens assumed by Plaintiffs in instituting the actions, spending time communicating with settlement Class Counsel, fulfilling litigation responsibilities, and taking on the risks inherent with publicly attaching themselves to the lawsuit. *See, e.g., In re Relafen*, 231 F.R.D. at 82 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.") (citation omitted); *In re Lupron*, 2005 U.S. Dist. LEXIS 17456, at *24-25 ("Incentive awards serve an important function in promoting class action settlements[.]"). "In

granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also . . . rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, No. 97-40204, 1999 U.S. Dist. LEXIS 7793, at *11-12 (D. Mass. May 19, 1999) (approving $5,000 each for the four representative plaintiffs); *see also In re Intuniv Antitrust Litig.*, 2022 U.S. Dist. LEXIS 13893, at *7 (approving $5,000 each of the four representative plaintiffs).

Here, Plaintiffs agreed to serve as settlement Class Representatives and have been actively involved in the litigation. Joint Decl. ¶ 45. Plaintiffs pursued the interests of the Settlement Class by undertaking responsibilities attendant to serving as class representatives, including, without limitation, periodically conferring with settlement Class Counsel, providing relevant documents and information, and reviewing pleadings, Settlement documents, and other filings in the Action. *Id.* The information they provided settlement Class Counsel was critical in determining the legal claims to be asserted and the scope of damages alleged. Accordingly, given Plaintiffs' time and efforts in supporting the litigation, combined with the risks and burdens of serving as settlement Class Representatives, the application for a $2,500.00 Service Award to each settlement Class Representative should be granted.

## X.    CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiffs' Unopposed Motion for Final Approval of this Settlement and Plaintiffs' Application for Attorneys' Fees, Costs, and Service awards. A proposed Final Approval Order is attached for the Court's convenience as **Exhibit D**.

Dated: June 7, 2024.                              Respectfully submitted,
                                                  */s/ Jeff Ostrow*
                                                  Jeffrey Ostrow (*pro hac vice*)
                                                  **KOPELOWITZ OSTROW P.A.**
                                                  One West Las Olas Blvd., Suite 500
                                                  Fort Lauderdale, Florida 33301
                                                  Telephone: 954-332-4200
                                                  ostrow@kolawyers.com

                                                  Christina Xenides
                                                  Mason A. Barney (*pro hac vice*)
                                                  Tyler J. Bean (*pro hac vice*)
                                                  **SIRI & GLIMSTAD LLP**
                                                  745 Fifth Avenue, Suite 500

New York, NY 10151
Telephone: 212-532-1091
cxenides@sirillp.com
mbarney@sirillp.com
tbean@sirillp.com

*Counsel for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of June, 2024, a copy of the foregoing document was

electronically filed with the Clerk of Court using the CM/ECF system.

*/s/ Jeff Ostrow*